CASE No. 1025.

BEARD v. STANTON.

1. A married woman being entitled, under her father's will, to a certain sum of money for life, with remainder over, in the hands of B., executor, she and her husband petitioned the Court of Equity for the appointment of S. as trustee. S. was so appointed, "upon his giving bond, &c., and that upon the execution of said bond, the executor, B., be authorized to deliver to such trustee" this trust fund. S. never gave such bond, but received the trust money from B., and at once paid it over to the life-tenant, who was then on the eve of removing to Florida, where she died, in 1863. *Held,* that S. was not the trustee of an express trust, but was a trustee by construction.

2. This case distinguished from *Chaplin* v. *Givens, Rice's Eq.* 154.

3. The statute of limitations runs in favor of a trustee of a trust raised by operation of law, or a constructive trust, and is, therefore, a bar to this action, brought in 1878 by the remaindermen to recover from S. the money received from B.

4. If it were an express trust, the statute would be a bar, the office of trustee having been disavowed by the act of parting with the trust properly, and the *cestuis que trust* having knowledge of such disavowal.

———

Before HUDSON, J., Fairfield, September, 1880.

Action by James M. Beard, George F. Beard, Sarah E. Beard, Joel A. Beard, and James M. Beard, administrator of W. W. Beard, against John D. Stanton. The case is fully stated in the opinion of this court.

*Mr. J. H. Rion,* for appellant.

*Messrs. A. S. Douglas* and *H. A. Gaillard,* contra.

April 18th, 1881. The opinion of the court was delivered by

McGOWAN, A. J. About January, 1846, James Beard, late of Fairfield county, died, leaving a will, of which James M. Beard is the surviving executor. The legatees under the will were his children, James M. Beard, George F. Beard, Joel A. Beard, Sarah King, and W. W. Beard, deceased, the plaintiffs, and Elizabeth C. Stanton, deceased. The shares of the daughters, respectively, were limited to their sole and separate use for life, and, in default of issue, " to be equally divided among his other children." In 1851 Elizabeth C. intermarried with one Isaac Stanton, and January 12th, 1852, Isaac Stanton and Elizabeth, his wife, petitioned the Court of Equity for the appointment of John D. Stanton as trustee of the petitioner, Elizabeth. It does not appear that either the proposed trustee or any of the " other children," were made parties. The court passed an order that John D. Stanton be appointed trustee of the petitioner, *upon his giving bond* to the commissioner of the court, &c., *conditioned* for the faithful execution of the trust, *and that upon the execution of said bond* the executor, James M. Beard, be authorized to deliver to such trustee the portion in his hands to which the petitioner is entitled."

This order was never complied with, and the Circuit judge finds as a fact " that John D. Stanton never became, by order of

the court, trustee of said property, he having failed or refused to give the required bond and accept the office."

But, notwithstanding such non-compliance, Stanton and wife being anxious to remove to Florida, James M. Beard, the executor, paid Mrs. Stanton's share of money (no question is made as to the negroes) to John D. Stanton, her husband's father, on November 24th, 1852, and took his receipt therefor in the words following:

"$1,314.91. Received of James M. Beard, executor of James Beard, deceased, the slave Esther, specifically bequeathed to Elizabeth C. Stanton by the will of James Beard. I have also received of said James M. Beard one thousand three hundred and fourteen 91-100 dollars in full of the balance due Elizabeth C. Stanton as legatee of the estate of James Beard, deceased.

(Signed)          " JOHN D. STANTON."   [L. S.]

This money was received, it seems, with the view of paying it to Mrs. Stanton, the life tenant, who was, as stated, on the eve of removing to Florida, and a few hours after its receipt was so paid to her.

In 1863 Mrs. Stanton died without leaving issue, and September 4th, 1878, this action was commenced by the plaintiffs, remaindermen under the will, against John D. Stanton to account as trustee for the *corpus* of the legacy paid to Mrs. Stanton. Respondent answered, denying that he ever accepted the appointment of trustee, admitting that he received about $700 for Mrs. Elizabeth Stanton, but that he received the same as agent, and at once delivered it to her, and pleading the statute of limitations.

The case came on to be heard before Judge Hudson, who held that, although he never complied with the order of court appointing him trustee, John D. Stanton having received the property, with the knowledge that it was the legacy of his daughter-in-law, became trustee by operation of law and liable to account for the same, yet, as no disability existed on the part of the plaintiffs at that time or since, they were barred by the statute of limitations, Stanton having committed a breach of trust, as

far back as 1852, by paying to the life-tenant the whole *corpus*, and permitting her to carry it beyond the jurisdiction of the court; that this was an abandonment of his trust, of which the plaintiffs had notice, and for which they could have sued, certainly, at any time after 1863, when the life-tenant died. He dismissed the complaint.

The plaintiffs appeal to this court upon the following exceptions:

" 1. For that his Honor held that the act of John D. Stanton, in paying to the life-tenant the whole *corpus* of the estate, money and negroes, and permitting her to carry the same beyond the jurisdiction of this court, was a clear abandonment of his trust.

" 2. For that his Honor held that plaintiffs have slumbered too long over their right of action against the defendant, and are barred by the lapse of time."

Upon the receipt of the legacy of his daughter-in-law by John D. Stanton, what relations existed between him and the plaintiffs, who had a remainder in the same, contingent upon the death of Elizabeth without issue ? By receiving that legacy, did he become trustee for them as to that contingent interest, and if so, was that an express, or an implied trust? He did not accept the appointment of trustee, nor give the bond, upon the execution of which he was to be trustee and entitled to receive the legacy. He was then certainly not trustee under the appointment of the court. The executor, Beard, had no right to pay the money to Stanton until he had executed the bond and clothed himself with the trust. It does not change the legal effect of the transaction that Stanton, as the executor states, promised to perfect the appointment, and that the money was paid to him upon the faith that he would do so. The bond was not given. Stanton was not trustee by the appointment of the court, and his receipt was no discharge to the executor, who committed a breach of his trust when he paid the legacy of his sister, Elizabeth, to one not authorized to receive it, and which he knew would be immediately paid to her, then on the eve of removing to Florida. *Clark* v. *Smith*, 13 *S. C.* 585.

But, whilst John D. Stanton was not trustee under the appointment of the court, he received the money with the knowl-

edge that it was part of the legacy of his daughter-in-law under the will of her father, James Beard, and that fixed upon him the responsibilities of trustee—not trustee by the act of the parties, but by operation of law—not an express, but a constructive trustee.

It is laid down that "a person may also become a trustee by construction of law, where a trust is created, but if no trustee is appointed, or the trustee named is incapable of taking, or refuses to act, or dies, or the office becomes vacant in any other way, in all such cases every person to whom the trust property comes, by reason of there being no trustee, will be treated as a trustee, and may be ordered to account. * * * A person may become a trustee by construction, by intermeddling with and assuming the management of property without authority." *Perry on Trusts*, §§ 217, 240, 245.

Chancellor Dunkin states the doctrine clearly in the case of *Joyce* v. *Gunnels*, 2 *Rich. Eq.* 259 : " Express trusts are those which are raised and created by the act of the parties, and implied trusts are those raised and created by act or construction of law. Express trusts are declared either by word or writing, and those declarations appear either by direct and manifest proof, or by proof of circumstances creating a violent and necessary presumption that such declarations were made either by word or writing, though the plain and direct proof thereof be not extant."

The trust imposed upon John D. Stanton by his receipt of the money, being in its nature an implied or constructive trust, constitutes no exception to the operation of the statute of limitations. "To cases of express or declared trusts the statute of limitations is inapplicable, but implied trusts constitute no exception to the operation of the statute." *Joyce* v. *Gunnels, supra,* and authorities. In that case it is said that an executor is an express trustee. He holds an express or declared trust, and as between him and the *cestui que trust* the statute is inapplicable. Not so of a purchaser from an executor. He, also, to certain intents, is a trustee, but this is an implied or constructive trust.

In *Beckford* v. *Wade,* 17 *Ves.* 95, Lord Eldon said; " It is certainly true that no time bars a direct trust as between *cestui*

*que trust* and trustee ; but if it is meant to be asserted that a Court of Equity allows a man to make out a case of constructive trust at any distance of time, I am not aware that there is any ground for a doctrine so fatal to the security of property as that would be." John D. Stanton stood like a purchaser from the executor. He was affected by an equity. It was necessary for the parties to pursue that equity in a reasonable time, and the court adopts the statute of limitations as a convenient rule of restriction. The plaintiffs being under no disabilities, and their right of action having certainly accrued in 1863, upon the death of the life-tenant, about fifteen years before the commencement of the action, we agree with the Circuit judge that they were barred.

It is urged for the plaintiffs that this is the case of an *express trust,* for the reason that after John D. Stanton knew that he had been appointed trustee he received the subject matter of the trust, which will be considered as evidence of an acceptance of the appointment by the court, under the authority of *Conyingham* v. *Conyingham,* 1 *Ves.* 522, followed by our case of *Chaplin* v. *Givens, Rice's Eq.* 154, holding the doctrine " that a trustee, with notice of his appointment as such, *interfering with the subject matter,* cannot repudiate the trust and say he acted merely as a factor or agent." We do not consider this case as like that of Chaplin *v.* Givens. In that case Charles Givens was appointed trustee in a deed *inter partes,* executed by his brother, John Givens. He was not required to give bond before he assumed the office of trustee, and he had acted as trustee in applying to the court for certain orders then made with his sanction and concurrence. In this case the appointment was by the court, and by the terms of the order could not take effect until the bond was executed, and the bond not being given, John D. Stanton could not be trustee or have title to the property. In such case a refusal or neglect to qualify, by giving bond, will be considered a refusal or disclaimer of the trust. 1 *Perry on Trusts,* § 262.

If the act of John D. Stanton in receiving the money, although he did not give bond or receipt for the money as trustee, made him a party to the appointment by the court and an express trustee, *what was the trust ?* The terms of such trust usually

appear in the condition of the bond; but here no bond was given, and the precise character of the trust proposed does not appear. It seems that the petition was *ex parte*—the prayer was for the appointment of "trustee of separate estate of Elizabeth Stanton." None of the plaintiffs were made parties or reference made to remainder or remaindermen. From all that appears the trust contemplated may have been only to protect the separate estate of Mrs. Stanton from the marital rights of her husband, without undertaking to provide for the payment over to the remaindermen on the falling in of the life estate. At the death of the life-tenant the rights of the plaintiffs, attached discharged of all trust. *Jones* v. *Cole*, 2 *Bail.* 330.

But, even in the view that John D. Stanton, by his act, made himself a party to the appointment of the court, and an express trustee for the remaindermen, we think the plaintiffs are barred. It is true, as a general rule, it takes twenty years to bar an equity, but the court often applies the bar of the statute in cases of demands analogous to legal demands, although the remedy may be only in equity. The possession of a trustee is not adverse, but is the possession of his *cestui que trust*, and the statute will not run. But the trustee may determine that character. When he does an act purporting *to be an execution of his trust* he shakes off the character of trustee and thenceforward stands in an adverse relation. If the *cestui que trust* supposes that the trust has not been faithfully and fully performed, he is put upon the assertion of his right. *Moore* v. *Porcher, Bail. Eq.* 192; *Roberts* v. *Lesly*, 8 *Rich. Eq.* 35; 1 *Wait's Act. & Def.* 271; *Perry on Trusts*, 864; *Clarke* v. *Borman's Ex'rs*, 18 *Wall.* 493.

In the case of *Clarke* v. *Borman's Ex'rs, supra*, it is said: "When a trustee has closed his relation to the property, and parted with all control of the property, the statute of limitations runs, notwithstanding it is an express trust." The Circuit judge found that " as far back as 1852 John D. Stanton had committed a clear breach of trust by paying to the life-tenant the whole *corpus* of the estate—money and negroes—and permitting her to carry the same beyond the jurisdiction of this court, viz., to the State of Florida. This was certainly known to Beard, the executor, and must have been likewise known to his brothers and

sisters, the co-plaintiffs. Under the circumstances, I hold that the plaintiffs have slumbered too long over their right of action, and are barred by lapse of time." We cannot say that this was error.

The judgment below is affirmed, and the appeal dismissed.

SIMPSON, C. J., and McIVER, A. J., concurred.